# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**L.R., Parent,**

      **Plaintiff,**

**vs.**                               **Case No. 4:18cv72-MW/CAS**

**LEON COUNTY SCHOOL DISTRICT,
MARGOT PALAZESI, an individual,
and PALAZESIM, LLC, in her
capacity as Contractor,
ESE Program Manager,
Litigation, and Section 504 Officer,**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff L.R., a parent,[1] filed a pro se second amended complaint [hereinafter "complaint"], ECF No. 14, asserting claims against the three Defendants under the Individual with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*., § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq*.  ECF No. 14 at 4.  Service was carried out on the Leon County

---

[1] Plaintiff has been permitted to proceed under pseudonym.  ECF Nos. 2, 5.

School District ("LCS"), ECF No. 12, which filed an answer to the complaint.  ECF No. 18.  The remaining two Defendants (Palazesi and Palazesim) filed a motion to dismiss the second amended complaint for failure to state a claim and failure to exhaust administrative remedies.  ECF No. 17.  Plaintiff has filed a response in opposition to the motion, ECF No. 24, and the motion is ready for a ruling.[2]

**Complaint, ECF No. 14**

Plaintiff "LR" is the parent of child "K," a minor student attending a middle school within the Leon County School District.  ECF No. 14 at 1-2.[3] "K has been since fourth grade, and continues to be, eligible for special education and related services pursuant to the IDEA."  *Id.* at 6-7.

---

[2] Plaintiff filed a 27-page response first as document 23, supported by Exhibits A-D (ECF No. 23-1) and Exhibits E-H (ECF No. 23-2).  Plaintiff then filed another response, ECF No. 24, which included the exhibits with the response instead of attaching them as exhibits.  The second filing is deemed to be an amended response, ECF No. 24, and pursuant to Local Rule 15.1(A), the first response, ECF No. 23, has not been reviewed.  Furthermore, the consent motion to seal the administrative record, ECF No. 25, has been granted.  ECF No. 27.

[3] At the time the complaint was filed in May 2018, K was enrolled in sixth grade. ECF No. 14 at 6.  K was "barely performing at a first grade level."  *Id.* at 24.

The complaint alleges that Defendants have violated the Individual with Disabilities Act (IDEA)[4] and subjected LR to discrimination and retaliation under Section 504 and the Americans with Disabilities Act.[5] *Id.* at 2.  Only Count II of the complaint, the ADA and § 504 claims, are brought against Defendants Palazesi and Palazesim; Counts I and II are brought against the LCS.  ECF No. 14 at 27-31; *see also* ECF No. 17 at 2.

The factual allegations of the complaint as related to the claim brought against the Palazesi Defendants assert that K was enrolled in the Leon County School District in January 2015.  ECF No. 14 at 14.  An evaluation was requested under the IDEA in February 2015.  *Id.* at 14-15.  Defendant Palazesi "oversaw K's eligibility determination meeting" but the LCS improperly "designated K as eligible for the autism category" and failed to "consider K for eligibility for SLD ("specific learning disability"), even though SLD was the initial suspected disability."  *Id.* at 15.

---

[4] The complaint states that the IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living."  20 U.S.C. § 1400(d) (quoted in ECF No. 14 at 9).  Such services are provided through an Individualized Education Program ("IEP") after an assessment to identify needs.  ECF No. 14 at 9-10.

[5] The complaint asserts that under § 504, schools must "provide a free appropriate public education to each qualified handicapped person."  ECF No. 14 at 12.

The complaint alleges that the evaluation was found by the Florida Department of Education to be in "noncompliance" with "the IDEA and state implementation rules." *Id.* at 17. Additionally, LR disagreed with the evaluation and the eligibility determination issued by Defendant Palazesi which designated K in the autism category rather than SLD. *Id.* at 10, 15-16. In response to LR's disagreement, Defendant Palazesi suggested that LR send K to a private school and said that having "an Independent Educational Evaluation (IEE) would not change anything for K." *Id.* at 19.

LR maintains that the LCS has "done practically nothing to help" K, who is regressing academically in spelling and writing. *Id.* at 25. LR challenges the determination that "K did not qualify as having a Specific Learning Disability in accordance with IDEA." *Id.* at 27. LR challenges the "Due Process Order" entered by the ALJ and the findings made therein. *Id.* at 27-29.[6]

LR asserts that the LCS and Defendant Palazesi violated her rights by "denying her a remedy under Section 504 to address her concerns and present evidence." ECF No. 14 at 29. LR also alleges that Defendant

---

[6] The complaint points out that LR filed a complaint on behalf of K in March 2016, ECF No. 14 at 16, and in March 2017. *Id.* at 19. LR advises that she was "pro se during the due process hearing." *Id.* at 25.

Palazesi discriminated and retaliated against LR by "withholding records and causing and/or knowingly permitting false documentation to be produced to impede K's rights to a fair and impartial due process hearing, and subsequent court and regulatory proceedings." *Id.* at 30-31.  Further, Defendant Palazesi "discriminated and retaliated against LR by knowingly categorizing and continuing to categorize K for a disability that is unsupported by required records, which has resulted in him being unfairly stigmatized and prevented his access to needed social, emotional and academic opportunities." *Id.* at 31.  Finally, LR contends that Defendants discriminated against her "by utilizing IDEA Part B funds to fund a portion of the LCS defense of K's due process case." *Id.*

**Motion to Dismiss, ECF No. 17**

Defendants Palazesi and Palazesim, LLC [hereinafter "Palazesi Defendants"], argue that Count II of the complaint should be dismissed because LR did not exhaust administrative remedies as to that Count prior to initiating this lawsuit.  ECF No. 17 at 5.  Defendants contend that LR's prior complaints and hearing before the Division of Administrative Hearings (DOAH) involved three issues under the IDEA but did not include a claim under the ADA or § 504.  *Id.* at 2-3.  Furthermore, it is argued that the

Palazesi Defendants were not parties in the DOAH proceeding and LR

proceeded pro se on behalf of K, but did not bring a claim on LR's own

behalf.  *Id.* at 8.

Additionally, the motion to dismiss seeks dismissal because Count II

fails to state a claim upon which relief may be granted against the Palazesi

Defendants.  ECF No. 17 at 13-14.  Furthermore, these Defendants argue

that an ADA claim is properly brought against the public entity, but not a

private or contractual entity, and is redundant.  *Id.* at 16.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be

granted is whether the Plaintiff has alleged enough plausible facts to

support the claim stated.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from <u>Conley v.</u>

<u>Gibson</u>, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face."

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting

Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[7]  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct

alleged."  Iqbal, 556 U.S. at 677 (citing Twombly, 550 U.S. at 556); *see*

*also* Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010).

"The plausibility standard" is not the same as a "probability requirement,"

and "asks for more than a sheer possibility that a defendant has acted

unlawfully."  Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556).  A

complaint that "pleads facts that are 'merely consistent with' a defendant's

liability," falls "short of the line between possibility and plausibility."  Iqbal,

129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule

8's command to simply give fair notice to the defendant of the plaintiff's

claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534

U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified

pleading standard applies to all civil actions, with limited exceptions.").  Pro

---

[7] The complaint's allegations must be accepted as true when ruling on a motion
to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert.
denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's
disbelief of a complaint's factual allegations."  Twombly, 127 S.Ct. at 1965, (quoting
Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

se complaints are held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoted in Twombly, 550 U.S. at 558).  The requirements of Rule 8 do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1949.  A complaint does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation."  556 U.S. at 678, 129 S.Ct. at 1949.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  Thus, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

One additional principle should be noted.  Defendants' motion to dismiss relies upon a final order entered in the DOAH proceeding.  ECF No. 17.  The order was attached to the initial complaint filed by LR, *see* ECF No. 1 at 36-123.  Because that hearing is relevant and central to Plaintiff's complaint, a copy of that order and the record on appeal has been provided.  ECF No. 25.  Additionally, because personally identifiable information is included in that record, the parties' consent motion to file the record under seal, ECF No. 25, was granted.  ECF No. 27.

Analysis of a motion to dismiss is generally limited to the face of the complaint and any attachments.  Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997) (citing 5 Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1356 at 590-92 (1969) (Wright & Miller)).  "However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."  Brooks, 116 F.3d at 1369 (quoting Venture Assoc. Corp. v. Zenith Data Sys. Corp.,

987 F.2d 429, 431 (7th Cir. 1993)).  Thus, it is permissible to consider the extrinsic documents in ruling on the motion because they are central to Plaintiff's claims and their authenticity is not challenged.  SFM Holdings, Ltd. v. Banc of America Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005), and Maxcess, Inc. v. Lucent Tech., Inc., 433 F.3d 1337, 1340 (11th Cir. 2005) (stating "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.").[8]

**Analysis**

Plaintiff LR points out that while the IDEA is an entitlement statute, the ADA and § 504 are antidiscrimination statutes.  ECF No. 24 at 3-4. "The IDEA, formerly known as the Education for All Handicapped Act ("EHA"), 20 U.S.C. § 1400 et seq., provides federal money to state and local education agencies in order to assist them in educating handicapped children, on the condition that the states and local agencies implement the

---

[8] "Even at the motion-to-dismiss stage, courts may take judicial notice of public records not subject to reasonable dispute, such as court documents."  Driessen v. Lockman, No. 11-23081-CV, 2012 WL 12892214, at *3 (S.D. Fla. June 8, 2012), aff'd, 518 F. App'x 809 (11th Cir. 2013) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1279-80 (11th Cir. 1999); Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010)).

substantive and procedural requirements of the Act."  N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1378 (11th Cir. 1996).  Put simply, the Act "ensures that children with disabilities receive needed special education services."  Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 748, 197 L. Ed. 2d 46 (2017).  "The IDEA offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education' - more concisely known as a FAPE - to all children with certain physical or intellectual disabilities."  Fry, 137 S. Ct. at 748.  "Because parents and school representatives sometimes cannot agree on" issues concerning the "special education and related services" which should be provided to a child, the IDEA establishes formal procedures for resolving disputes.  137 S. Ct. at 749.  Included within that dispute mechanism are procedural safeguards which permit parental involvement, including administrative review by a state educational agency if dissatisfied with the findings or decisions made following an "impartial due process hearing."  20 U.S.C. § 1415; N.B. by D.G., 84 F.3d at 1378.  "[P]laintiffs are required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities."  84 F.3d at 1378.

"Important as the IDEA is for children with disabilities, it is not the only federal statute protecting their interests." Fry, 137 S. Ct. at 749. "Of particular relevance to this case are two antidiscrimination laws - Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and § 504 of the Rehabilitation Act, 29 U.S.C. § 794 - which cover both adults and children with disabilities, in both public schools and other settings." 137 S. Ct. at 749. "Title II forbids any 'public entity' from discriminating based on disability." Id. Additionally, as correctly stated by Plaintiff LR in response to the motion to dismiss, § 504 of the Rehabilitation Act is an antidiscrimination statute which provides: "No otherwise qualified individual with a disability in the United States . . . shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . . " 29 U.S.C. § 794(a) (quoted in Redding v. Nova Se. Univ., Inc., 165 F. Supp. 3d 1274, 1289 (S.D. Fla. 2016)). Both of those statutes permit an aggrieved party "to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages." Fry, 137 S. Ct. at 750 (citing to 29 U.S.C. § 794a(a)(2); 42 U.S.C. § 12133).

## 1.    Exhaustion

However, "a plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws must in certain circumstances - that is, when 'seeking relief that is also available under' the IDEA - first exhaust the IDEA's administrative procedures." 137 S. Ct. at 750.  In defining those "circumstances," the Supreme Court recently held that a suit under the ADA or Rehabilitation Act "must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.' " Fry, 137 S. Ct. at 752.  Thus, the "exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education." 137 S. Ct. at 754.  If it does, exhaustion is required.  If a complaint seeks redress for "other harms, independent of any FAPE denial, [it] is not subject to § 1415(l)'s exhaustion rule because, once again, the only 'relief' the IDEA makes 'available' is relief for the denial of a FAPE." *Id.* at 754-55; *see also* Durbrow v. Cobb Cty. Sch. Dist., 887 F.3d 1182, 1189 (11th Cir. 2018) (finding that "[b]ecause the crux of their § 504 and ADA claims alleged that the School District had denied [the child] a FAPE, the claims were subject to the IDEA's administrative exhaustion requirement.").

Plaintiff LR acknowledges the Court's holding in Fry, but contends that Congress did not intend "for IDEA administrative requirements to address 504 and ADA matters," asserting it if it had, "Congress would have written that in the statute."  ECF No. 24 at 11-12.  LR's assertion is not correct.  The relevant statute provides:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including § 504], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]*.

20 U.S.C. § 1415(l) (quoted in Fry, 137 S. Ct. at 750) (emphasis added).

Thus, Congress has required exhaustion of claims brought under the ADA or § 504 of the Rehabilitation Act if they are also based on an IDEA claim.

Laura A. v. Limestone Cty. Bd. of Educ., 610 F. App'x 835, 836 (11th Cir. 2015) (holding that "whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings") (quoting M.T.V. v. DeKalb Cnty. Sch. Dist., 446 F.3d 1153, 1158 (11th Cir. 2006)); Babicz v. Sch. Bd. of Broward Cnty., 135 F.3d

1420, 1422 n.10 (11th Cir. 1998) (stating "[t]he IDEA's exhaustion requirements apply even if a plaintiff seeks relief via a different statute"); Durbrow, 887 F.3d at 1190 ("plaintiffs cannot circumvent the IDEA's exhaustion requirement by suing for a FAPE deprivation under a different federal statute").  The statute is clear on this point; the ambiguity lies in determining whether an ADA or § 504 claim seeks relief also under the IDEA.  *See, e.g.*, J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ., 877 F.3d 979, 986 (11th Cir. 2017) (noting the cause of action did "not fit neatly into Fry's hypotheticals").

Plaintiff LR also argues that she "attempted to have her retaliation concerns heard prior to the last resort of bringing the matter to a federal court."  ECF No. 24 at 12.  LR asserts that an examination of the record will show "that the substance of the 504 and ADA retaliation and discrimination allegations specified in the complaint [were] presented at the hearing for administrative remedies under the IDEA to the extent they impacted FAPE."  *Id.* at 14.  Thus, the first consideration is determining whether Plaintiff LR brought her § 504 and ADA claims in the prior administrative proceedings.

The Supreme Court in Fry instructed courts in a method to determine whether an ADA or § 504 claim is also alleging the denial of a FAPE, an IDEA claim.  One way to determine if the "complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions." Durbrow, 887 F.3d at 1190 (citing Fry, 137 S. Ct. at 756).  "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school-say, a public theater or library? And second, could an adult at the school-say, an employee or visitor-have pressed essentially the same grievance?"  Id. at 756 (quoted in 887 F.3d at 1190).  "Affirmative answers to those questions suggest that the heart of the claim does not concern the deprivation of a FAPE, since the claim would not be inextricably bound to the appropriateness of an intellectually disabled child's educational program."  Id. at 756 (quoted in 887 F.3d at 1190).

The parties jointly filed the record of the administrative proceeding under seal.  ECF No. 25.  The record establishes that several formal complaints were filed by LR with the Florida Department of Education on behalf of K.  First, in March 2016, Plaintiff filed a complaint which asserted

that the LCS had failed to evaluate K "in all areas of suspected disability, specifically SLD."  ECF No. 25-2 at 187.[9]  On August 5, 2016, a complaint was filed alleging that LR had not been provided the proper paperwork from the LCS to commence an evaluation.  On October 12, 2016, Plaintiff complained again that the LCS "failed to evaluate" K under the IDEA for "potential SLD" and provide FAPE.  ECF No. 25-2 at 19.  The complaints were consolidated in administrative proceedings before DOAH.  ECF No. 25-2 at 387-88 (consolidating case numbers 16-5891E, 16-7375E, and 17-0002E).  As stated in the final order entered on November 3, 2017, there were three issues presented:

> 1 - Whether the School Board violated its Child Find obligation under the Individuals with Disabilities Education Act (IDEA) by failing to evaluate the Student for specific learning disability (SLD);
>
> 2 - Whether the School Board violated the IDEA and failed to provide the Student a free appropriate public education (FAPE) by failing to develop an appropriate Individual Education Plan (IEP) and deliver exceptional student education services (ESE) for the 2015-2016 school year and the 2016-2017 school year; and

---

[9] The record was filed with ECF No. 25.  Part 1 of the record is the transcript which is referenced as ECF No. 25-1.  Part 2 is the administrative record on appeal, referenced as ECF No. 25-2.

Case No. 4:18cv72-MW/CAS

> 3 - Whether the School Board subjected the
> Student to excessive or inappropriate discipline in
> violation of the IDEA.

ECF No. 25-2 at 693-94; *see also* ECF No. 17 at 2-3; ECF No. 1 at 36-37.

The parties in the DOAH proceeding submitted proposed final orders.  ECF

No. 25-2 at 551-620; 621-688.  Comparison of those proposed orders

reveals no dispute between the parties that the issues presented in the

administrative proceeding were all brought as IDEA violations.  *Id.* at 553,

621-22.  No ADA or § 504 claims were litigated in that case.

Moreover, in evaluating those claims under the guidance of Fry,

Plaintiff could not have brought those claims if the alleged conduct had

occurred at another public place such as a theater or post office.  The

claims are explicitly focused on the sufficiency of the education provided to

the minor child, K, and the IEP which was developed after evaluating K's

learning disability.  Secondly, an adult visitor or employee of the school

could not have asserted the same claims because "an adult employee or a

visitor at the School District inasmuch as the IDEA does not entitle adult

employees and visitors to individualized special education."  Durbrow, 887

F.3d at 1191.

Exhaustion of administrative remedies is required before a party resorts to the judicial forum "to challenge the actions of the local school authorities."  N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1378 (11th Cir. 1996) (citations omitted).  "Key reasons for requiring the exhaustion of administrative remedies are as follows: 1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error."  N.B. by D.G., 84 F.3d at 1378-79.  However, exhaustion is not required if "resort to administrative remedies would be 1) futile or 2) inadequate."  84 F.3d at 1379.

In an effort to show that exhaustion of these claims was futile, Plaintiff LR points out that she filed a motion to amend the consolidated complaint to include § 504 and ADA claims.  ECF No. 24 at 8; *see also* ECF No. 24, Ex. A; ECF No. 25-2 at 399-403.  That motion sought to add claims for "retaliation and denial of FAPE" under § 504 of the Rehabilitation Act, a claim under Title II of the ADA, and Title IX.  ECF No. 25-2 at 399.  Plaintiff

points out that LCS opposed the motion, arguing in part that "the Division of Administrative Hearings lacks subject matter jurisdiction to address non-IDEA claims in an IDEA due process hearing." *Id.* at 404; *see also* ECF No. 24, Ex. B (cited in ECF No. 24 at 9). LCS argued that "Rule 6A-6.03311 confers on ALJs authority in such due process hearings to determine whether an 'exceptional student' was denied 'FAPE,' as those terms are defined in the IDEA." *Id.* at 405. Furthermore, "[n]othing in section 1003.57, Rule 6A-6.03311, or any other statute or rule confers on ALJs the authority to address issues raised outside the parameters of the IDEA." *Id.* at 406. The motion to amend was denied by the ALJ on May 26, 2017. *Id.* at 411.

Plaintiff's argument further supports finding that Plaintiff is aware that the DOAH proceeding did not include claims under the ADA or § 504 of the Rehabilitation Act. It does not, however, demonstrate that exhaustion of such claims was futile or unavailable. The LCS motion pointed out that a child was not without administrative remedy for § 504 claims. *Id.* at 408. The LCS provides for hearings on those issues through Policy 2260.03,[10]

---

[10] Judicial notice is taken of the Leon County School Board's Policy 2260.01 which prohibits discrimination under the ADA amended § 504 of the Rehabilitation Act, and retaliation against a person who opposed any practice made unlawful by those

and the LCS advised that K's parent had requested a § 504 impartial hearing. *Id.* at 408-09. Plaintiff has advised that she filed "a 504 retaliation complaint" in August 2016 with the United States Department of Education's Office of Civil Rights. ECF No. 24 at 16, n.2. Plaintiff states that an investigation had commenced and "remains open" at the time she filed her response. *Id.* Plaintiff has not, however, demonstrated that she exhausted the remedy made available by the LCS to assert claims under the ADA or § 504. Thus, Plaintiff has not demonstrated exhaustion of administrative remedies and the motion to dismiss the ADA and § 504 claims brought against the Palazesi Defendants should be granted.

## 2.  Pro Se Parent Issue

An additional problem with Plaintiff LR's claim in Count II has been pointed out by Defendant Palazesi. ECF No. 17 at 14-15. The retaliation and discrimination claims Plaintiff seeks to bring in this case cannot be litigated here because Plaintiff "lacks standing under section 504, or the ADA to bring a discrimination claim on behalf of K." ECF No. 17 at 15. The underlying DOAH proceeding was brought on behalf of LR's minor

---

laws. *See* http://www.neola.com/leon-fl/ (cited in ECF No. 25-2 at 408). The Policy also permits the filing of complaints raising such issues.

child, K.  K was the only named plaintiff ("petitioner") in the administrative

proceeding.  *See* ECF No. 25-2 at 693-777.  However, LR is the only

named Plaintiff in this case.  She may not assert ADA or Rehabilitation Act

claims for two reasons.

First, to be entitled to relief under either § 504 or the ADA, a plaintiff

must be an individual with a qualifying disability.  J.S.,, 877 F.3d at 985

("Discrimination claims under the ADA and the Rehabilitation Act are

governed by the same standards"); Boyle v. City of Pell City, 866 F.3d

1280, 1288 (11th Cir. 2017) ("Section 504 of the Rehabilitation Act of 1973

prohibits entities receiving federal funds from discriminating against

otherwise qualified individuals with disabilities."); Connelly v. WellStar

Health Sys., Inc., No. 18-11217, 2019 WL 140823, at *1 (11th Cir. Jan. 9,

2019) (ADA plaintiff must show "she (1) is disabled (2) is a qualified

individual, and (3) experienced unlawful discrimination because of her

disability"); *see also* ECF No. 14 at 12.  Plaintiff has not alleged that she

has a disability and, thus, could not state a claim on her own behalf under

those statutes.[11]  Instead, the complaint asserts disability only of the minor

---

[11] Furthermore, Plaintiff LR could not bring a claim for retaliation under the ADA because she must show that she suffered discrimination "for opposing an act or practice made illegal under the ADA."  Connelly, 2019 WL 140823, at *4.  As noted above,

child, K.  Thus, K is the party who has allegedly suffered injury under the ADA and § 504, not Plaintiff.

More importantly, the allegations of the second amended complaint, ECF No. 14, reveal that Plaintiff LR is seeking to litigate an ADA and Rehabilitation Act claim on behalf of her child, K.[12]  Plaintiff LR is a parent, understandably concerned about the education of her child.  However, LR is not an attorney.  LR has the right to bring a case, pro se, to assert claims on her own behalf.  28 U.S.C. § 1654; see Franklin v. Garden State Life Ins., 462 F.App'x 928, 930 (11th Cir. 2012).  However, a pro se parent does not have the legal right or authority to sue on behalf of a minor child because a non-attorney cannot act as legal counsel for another person.[13] Devine v. Indian River Cty. Sch. Bd., 121 F.3d 576, 581 (11th Cir. 1997),

---

Plaintiff has not demonstrated that she has pursued an ADA claim.

[12] The list of the parties is illustrative as it provides information only on K and the Defendants, not LR.  ECF No. 14 at 6-7.

[13] This issue was addressed at case initiation.  See ECF No. 5.  Furthermore, Plaintiff LR indicated in a motion requesting the appointment of counsel for the minor child, K, that she did "not have standing to represent K for purposes" of bringing § 504 and ADA claims.  ECF No. 8.  That motion was denied because one plaintiff cannot appear pro se in a complaint while another plaintiff is represented by counsel in the same complaint.  ECF No. 10 at 3.  Furthermore, the amended complaint, ECF No. 9, filed with the motion, ECF No. 8, listed only one Plaintiff - LR - so there was no need to appoint counsel for a non-existent plaintiff.  ECF No. 10 at 3.

Case No. 4:18cv72-MW/CAS

*overruled in part on other grounds*, Winkelman ex rel. Winkelman v. Parma

City Sch. Dist., 550 U.S. 516, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007).

In Winkelman ex rel. Winkelman v. Parma City Sch. Dist., the

Supreme Court considered "whether parents, either on their own behalf or

as representatives of the child, may proceed in court unrepresented by

counsel though they are not trained or licensed as attorneys."  550 U.S. at

520, 127 S. Ct. at 1998.  After examining the provisions of the IDEA, the

Court held that "[p]arents enjoy rights under IDEA; and they are, as a

result, entitled to prosecute IDEA claims on their own behalf."  550 U.S. at

535, 127 S. Ct. at 2006-07.  In particular, the Court found that the IDEA

afforded "parents independent, enforceable rights under IDEA" which were

enforceable at the administrative stage and, thus, concluded "it would be

inconsistent with the statutory scheme to bar them from continuing to

assert these rights in federal court."  *Id.* at 526, 127 S. Ct. at 2002.  In light

of that holding, the Court found it did not need to resolve the "alternative

argument, which concerns whether IDEA entitles parents to litigate their

child's claims pro se."  *Id.* at 535, 127 S. Ct. at 2007.

Because that issue was saved for another day, courts have

distinguished Winkelman, pointing out that "the Supreme Court did not

specifically address the issue whether parents may represent their child's

interests pro se; rather, the Supreme Court held that the IDEA gives

parents substantive rights of their own that they may vindicate pro se."

Dunn-Fischer v. Dist. Sch. Bd. of Collier Cty., No. 2:10-CV-512, 2011 WL

1085036, at *1-2 (M.D. Fla. Mar. 21, 2011).  Courts uniformly permit

parents to "sue or defend on behalf of a minor, but" prohibit a parent from

acting "as legal counsel for their child."  Dunn-Fischer, 2011 WL 1085036,

at *1-2 (relying on Rule 17(c)(1) to hold "that as a general matter parents

may not represent pro se any interests that exclusively belong to their child

under the IDEA, but that parents may represent themselves pro se to

vindicate any rights that have been granted to them under the IDEA."); *see*

*also* FuQua v. Massey, 615 F. App'x 611, 612 (11th Cir. 2015) (holding that

dismissal was proper in the district court because non-attorney parent did

not have a right under 28 U.S.C. § 1654 to represent her minor daughter

and her complaint did not show that her own rights were violated); Santiago

v. Jamison, No. 2:13-CV-781-FTM-29CM, 2014 WL 4446267, at *1 (M.D.

Fla. Sept. 9, 2014) (finding that non-attorney parents may not represent the

claims of their child); Driessen v. Lockman, 518 F. App'x 809, 812 (11th

Cir. 2013) (affirming dismissal by the district court and noting "a parent may

not bring a pro se action in federal court on behalf of a child"); Oliver v.

Southcoast Med. Grp., LLC, No. CV411-115, 2011 WL 2600618, at *1-2

(S.D. Ga. June 13, 2011), report and recommendation adopted, No.

CV411-115, 2011 WL 2600566 (S.D. Ga. June 29, 2011) (holding that

"non-attorney parent generally must be represented by counsel in bringing

an action on behalf of his or her child"); L.M.P. on behalf of E.P. v. Sch. Bd.

of Broward Cty., Fla., No. 05-60845- CIV, 2010 WL 11590861, at *2 (S.D.

Fla. Feb. 16, 2010) (concluding that "where the claims are brought by the

parents 'on behalf' of their minor children, and the only rights alleged to

have been violated are the rights of the minor children, the parents lack

standing to sue the School Board because a non-attorney parent may not

appear pro se on behalf of his or her minor children").

This Court agrees with those cases.  A "parent may not represent

their child pro se" in claims brought under the ADA or the Rehabilitation

Act, although a parent may bring those claims on her own behalf, pro se.

2011 WL 1085036, at *2.  Neither § 1654 nor Federal Rule of Civil

Procedure 17(c) permits LR to represent the interests of her minor child, K,

in this action without counsel.  That is, in fact, what LR has sought to do.

LR was previously given an opportunity to obtain counsel, *see* ECF No. 5,

but she has not done so.  Accordingly, because Plaintiff cannot bring pro

se claims on behalf of her minor child, K, in this case, the claims brought

under the ADA and the Rehabilitation Act in Count II, should be dismissed.

**Recommendation**

It is respectfully **RECOMMENDED** that the motion to dismiss, ECF

No. 17, be **GRANTED** as to the Palazesi Defendants, and that Count II of

Plaintiff's second amended complaint, ECF No. 14, be **DISMISSED**

because Plaintiff failed to exhaust administrative remedies as required,

because Plaintiff is not authorized to bring pro se claims under the ADA or

§ 504 of the Rehabilitation Act on behalf of another person, and because

the allegations are insufficient to state a claim for relief.  It is also

**RECOMMENDED** that this case be **REMANDED** for further proceedings on

the surviving claims brought against the Leon County School Board.

**IN CHAMBERS** at Tallahassee, Florida, on February 14, 2019.

S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**